FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

JAN 21 2022


DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:22-00026 |
| v. ) | 18 U.S.C. § 2 |
| ) | 18 U.S.C. § 1957 |
| SHAWN PALMER ) | |

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

At all times material to this Information:

1. **SHAWN PALMER** is a resident of Smyrna, Tennessee, and the sole owner of Palmers Transportation, Inc., which is registered as a Tennessee corporation located in La Vergne, Tennessee.

2. Account A, Account B, and Account C were all held by **SHAWN PALMER** and Palmers Transportation, at financial institutions whose deposits were insured by the National Credit Union Administration.

## I. The Paycheck Protection Program

3. The United States Small Business Administration ("SBA") is an agency within the executive branch of the United States government. It is a function of the SBA to provide support to small businesses and entrepreneurs. It is further a mission of the United States to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, signed into law in March 2020, established several temporary programs in response to the COVID-19 pandemic. One of these new programs was the SBA Paycheck Protection Program ("PPP"), which

is a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA will forgive all or part of PPP loans if at least 60% of the proceeds are spent on payroll costs for at least eight weeks after disbursement and borrowers submit documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities. Interested applicants applied through an approved SBA lender and the loans were one hundred percent guaranteed by SBA.

5. The PPP application process requires applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contains information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. Applicants also are required to make good faith certifications, including that they have read the application and that all the information provided in the application and all supporting documents is true and accurate in all material respects, that economic uncertainties have necessitated their loan requests for continued business operations, and that they intend to use loan proceeds only for the authorized purposes. Those permissible purposes included payroll costs, interest on mortgages, rent, and utilities.

6. The PPP loan application was processed by Kabbage, Inc., an SBA approved lender headquartered in Atlanta, Georgia. Kabbage approved the loan and disbursed the funds from its bank accounts held at Wells Fargo Bank N.A., a bank insured by the Federal Deposit Insurance Corporation.

7. Kabbage utilized a website/portal login and password for its clients to use to apply for PPP loans and to provide required documentation by securely uploading electronic copies of documents as photographs or scanned documents.

8. Kabbage's computer servers could be accessed by any device (phone, tablet, or computer) with internet access. The Kabbage servers are located in Virginia.

9. Kabbage utilized DocuSign for its clients to sign PPP loan applications and loan notes. DocuSign is a company that allows organizations to manage and sign electronic agreements. The DocuSign servers that pertain to this case are located in Illinois.

## II. The PPP Loan

10. Beginning as early as June 1, 2020 through on or about July 31, 2020, **SHAWN PALMER**, Individual 1, and others known and unknown to the United States Attorney, fraudulently obtained and misused PPP loan proceeds awarded to Palmers Transportation.

11. On June 4, 2020, **SHAWN PALMER** emailed to Individual 1 the following records associated with Palmers Transportation: a Certificate of Good Standing issued by the Tennessee Department of State, and a voided check written against Account A. These items were eventually submitted to Kabbage in connection with the PPP loan application.

12. On approximately June 9, 2020, **SHAWN PALMER** emailed to Individual 1 a copy of his filed 2019 personal income tax return, indicating Palmers Transportation received less than $200,000 in gross revenue for tax year 2019.

13. On approximately June 10, 2020, **SHAWN PALMER** called Kabbage to inquire about the status of his application. He affirmed that Palmers Transportation had 27 employees. However, **PALMER** had no more than two employees at Palmers Transportation, including himself.

14. **SHAWN PALMER**'s loan application and supporting documentation contained materially false and fraudulent representations, including:

    a. Falsely representing that Palmers Transportation had 27 employees and an average

monthly payroll of $205,748;

b. Falsely representing that Palmers Transportation had gross receipts of $6,744,254.12 for tax year 2019; and

c. Falsely representing that Palmers Transportation had for tax year 2019 gross wages of $2,322,567 and $87,311 in state income tax withholdings.

15. The following certification bore **SHAWN PALMER**'s electronic signature: "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

16. Kabbage emailed **SHAWN PALMER** on June 17, 2020 advising him that the PPP loan application was approved.

17. As a result of the misrepresentations regarding **SHAWN PALMER**'s PPP loan application, on or about June 18, 2020, Kabbage, through Wells Fargo Bank N.A., electronically deposited via ACH transfer, PPP loan proceeds in the amount of $514,370 to Account A.

18. On June 25, 2020, Individual 1 requested from **SHAWN PALMER** via text message approximately $25,000. Individual 1 told **PALMER** to break the payment into smaller amounts with different dates if **PALMER** so desired.

19. **SHAWN PALMER** used portions of the PPP loan proceeds to establish and fund other accounts held at various financial institutions. For example, on or about June 19, 2020, **PALMER** transferred $500,000 of the PPP loan proceeds from Account A to Account B. On or about July 3, 2020, **PALMER** withdrew $100,000 from Account B to open Account C. Account C was opened at a financial institution located in Murfreesboro, Tennessee.

20. **SHAWN PALMER** did not use the PPP loan proceeds for its authorized purpose. Instead, **PALMER** knowingly spent portions of the proceeds on items that he knew were not

4

Case 3:22-cr-00026   Document 1   Filed 01/21/22   Page 4 of 6 PageID #: 4

authorized under the PPP loan program. For example, he used portions of the PPP loan proceeds to purchase a 2020 Ford F350, a 2016 Maserati Quattroporte, and a 2020 Freightliner Coronado.

### III. Money Laundering

21. On or about July 31, 2020, in the Middle District of Tennessee and elsewhere, **SHAWN PALMER**, did knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, which **PALMER** knew was derived from the specified unlawful activity of Wire Fraud, as relating to the fraudulent PPP loan application, in violation of 18 U.S.C. § 1343; to wit, a check from Account C to an auto dealership located in Brentwood, Tennessee for the purchase of a 2016 Maserati Quattroporte for $41,611.84.

All in violation of Title 18, United States Code, Sections 1957 and 2.

### FORFEITURE ALLEGATION

THE UNITED STATES ATTORNEY FURTHER CHARGES:

1. The allegations contained in this Information are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of the charge alleged in this Information, **SHAWN PALMER** shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1): any property, real or personal, involved in such offenses, and any property traceable to such property, including but not limited to a money judgment in the amount of $41,611.84 representing the value of the property involved in the offense.

3. If any of the property described above, as a result of any act or omission of **SHAWN PALMER**:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of **SHAWN PALMER**, up to the value of said property listed above as subject to forfeiture, including but not limited to a money judgment representing the value of said property.

MARK H. WILDASIN
UNITED STATES ATTORNEY

*/s/ Stephanie Toussaint*

STEPHANIE N. TOUSSAINT
ASSISTANT UNITED STATES ATTORNEY

*/s/ Anna Haffner*

ANNA L. HAFFNER
SPECIAL ASSISTANT UNITED STATES ATTORNEY